IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBERT E. WILLIAMS, # B-89342, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 14-cv-1416-JPG |
| | ) |
| DR. CALDWELL, | ) |
| S.A. GODINEZ, | ) |
| WARDEN JAMES LUTH,[1] | ) |
| and UNKNOWN PARTIES, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff, currently incarcerated at Vandalia Correctional Center ("Vandalia"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. He is serving a four-year sentence for a drug offense. Plaintiff claims that Defendants are unable to render adequate treatment for his serious medical conditions at Vandalia, and he seeks a transfer to a different prison or to work release/house arrest where he may obtain proper medical care.

Plaintiff suffers from a serious allergic condition, "allergy angioedema" (Doc. 1, p. 5). This illness causes severe and painful swelling in various parts of his body, which may be triggered by exposure to dust, dirt, laundry detergent, certain foods, and other allergens. When Plaintiff's tongue and throat swell up, it may cut off his breathing and become life-threatening (Doc. 1, p. 6). He also suffers from sleep apnea (Doc. 1-1, pp. 28-29).

Plaintiff alleges that in April 2014, he was told by Defendant Caldwell (Vandalia

---

[1] Warden James Luth's surname was inadvertently omitted from the Court's docket sheet. The Clerk shall be directed to correct the error.

physician) that his condition was very serious, and that he "could not be treated here at this prison because it is not equipped to handle this type of illness" Doc. 1, p. 5). Plaintiff has suffered several allergic episodes during his time at Vandalia, and claims he was given only Benadryl as an antidote. However, Defendants Caldwell, Godinez (Director of the Illinois Department of Corrections), and Luth (Vandalia Warden) did grant approval for Plaintiff to have a CPAP machine in his cell to help him breathe at night.[2]

Plaintiff does not have access to the allergy specialist who treated him before he was sent to prison. Because of Plaintiff's condition, a "medical hold" has been placed on him. As a result, he contends, he is not eligible for a transfer to either a work release program or to house arrest/electronic monitoring – either of which would allow him to obtain treatment from an outside medical provider. He has requested Defendant Caldwell to lift the medical hold, but the hold has remained.

Along with his complaint, Plaintiff included 40 pages of medical records, grievances, and other documents (Doc. 1-1). The medical records disclose that from late March 2014 through May 2014, Plaintiff was treated in the prison Health Care Unit for serious allergic reactions at least six times (Doc. 1-1, pp. 2-21). He was given Benadryl each time, and he was also treated with other medications. These included intravenous Solu-Medrol,[3] Dexamethasone,[4] and epinephrine (Epipen) (Doc. 1-1, pp. 4-10; 15-19).

As relief, Plaintiff seeks an order requiring the medical hold to be terminated, so that he

---

[2] Plaintiff states that every morning near 7:00 a.m., correctional officers cut off the electricity in his housing unit, thus turning off the "sleeping machine" (CPAP) (Doc. 1, p. 7). Although he identifies C/O Castleman as one of the officers who has shut off the power, Plaintiff does not assert any claims against these officers or include them as Defendants in this matter.
[3] Solu-Medrol is a brand name for methylprednisolone, a corticosteroid used to treat severe allergic reactions. Http://www.drugs.com/cdi/solu-medrol-solution.html (last visited Jan. 21, 2015).
[4] Dexamethasone is another corticosteroid used to treat inflammatory conditions. http://www.drugs.com/dexamethasone.html (last visited Jan. 21, 2015).

may transfer to another prison or apply for house arrest or work release. He also seeks compensatory and punitive damages (Doc. 1, p. 8).

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a pro se complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Plaintiff's overarching claim (designated herein as **Count 1**) is that Defendants have

violated the Eighth Amendment's prohibition against cruel and unusual punishment, because they have been deliberately indifferent to his serious medical needs. However, Plaintiff's own allegations, augmented by the exhibits he attached to his complaint, demonstrate just the opposite. The Vandalia medical providers have treated his condition each time he has experienced an allergic reaction. For the reasons discussed below, Plaintiff's deliberate indifference claim against Defendants Caldwell, Godinez, Luth, and the Unknown Party Health Care Employees (Count 1) shall be dismissed.

**1. Deliberate Indifference to Serious Medical Needs**

In order to state a claim for deliberate indifference to a serious medical need, an inmate must show that he (1) suffered from an objectively serious medical condition; and (2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. "Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted); *see also Farmer v. Brennan*, 511 U.S. 825 (1994). The Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). A defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008). Further, mere disagreement with a physician's chosen course of an inmate's medical treatment does not amount to deliberate indifference under the Eighth Amendment. *See Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003); *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) (courts will not takes sides in disagreements about medical

personnel's judgments or techniques); *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996).

The complaint clearly demonstrates that Plaintiff suffers from at least one objectively serious condition. He has had several allergic episodes at Vandalia involving swelling of his tongue, throat, and face. According to his medical records, he was treated each time by Vandalia nurses, and was also under the care of Defendant Caldwell. Contrary to Plaintiff's claim that he was treated "only" with Benadryl, he was given that and other medications in order to relieve his swelling and other symptoms. He was monitored in the Health Care Unit while he was undergoing treatment. Defendant Caldwell ordered that an Epipen be kept on hand in order to treat Plaintiff in the event of future attacks (Doc. 1-1, p. 9; notes from May 5, 2014). Far from indicating deliberate indifference to Plaintiff's condition, this documentation shows that Defendant Caldwell and the John Doe Defendant Health Care Employees gave Plaintiff what appears to be appropriate treatment on every occasion when he suffered symptoms.

Plaintiff offers no specifics regarding his claim that his medical care at Vandalia has been substandard, other than the fact that he cannot obtain treatment from a specialist. Even if the medical Defendants had rendered less than optimal care, or if their treatment had crossed the line into malpractice, this would not establish deliberate indifference. The touchstone of a constitutional claim is that the prison official must have been aware of a risk of serious harm to the prisoner, yet failed to take action to mitigate that risk. No such failure is apparent here, either from the complaint or the voluminous attachments. To be sure, no allergy specialist is on staff at the prison. But as noted above, Plaintiff is not entitled to the best possible medical care, nor may he demand specific treatment. *Forbes*, 112 F.3d at 267. Despite Plaintiff's allegation that Defendant Caldwell said the prison was "not equipped" to handle his illness, Plaintiff's documentation demonstrates that Defendants took reasonable measures to treat his condition.

This is all that is constitutionally required.

Additionally, Defendants Caldwell, Godinez, and Luth all approved the request for Plaintiff to be allowed to have a CPAP machine in his cell to treat his sleep apnea. As Plaintiff points out, this action recognized the seriousness of Plaintiff's medical needs. Likewise, it shows that these Defendants were not deliberately indifferent to those needs – to the contrary, they ensured that he received the necessary medical device.

Plaintiff's allegations that correctional officers have caused the electricity to be cut to his cell, thus rendering the CPAP machine inoperable for some period of time, do raise a concern as to whether these actions affected Plaintiff's health. Because Plaintiff has not asserted any claim against those individuals, nor has he elaborated on whether they were aware of any potential danger to his health that might result from their actions, the Court will not address this matter further herein.

However, should Plaintiff wish to amend his complaint in this regard, he shall be allowed an opportunity to do so before this action is dismissed. If he does submit an amended complaint, this claim shall be designated as **Count 2**. Nothing herein shall be construed as a comment on the merits of such a potential claim. If the amended complaint still fails to state a claim, or if Plaintiff does not submit an amended complaint, the entire case shall be dismissed with prejudice, and the dismissal shall count as a strike pursuant to § 1915(g). The amended complaint shall be subject to review pursuant to § 1915A.

2. **Prison Transfer**

Plaintiff believes that if his "medical hold" is lifted, he will then have an opportunity to move to a different facility, or to be placed on work release or home confinement. He states that any of these alternative placements may give him access to better medical care than he has

received at Vandalia. In June 2014, he requested Defendant Caldwell to lift the medical hold (Doc. 1-1, p. 2). However, this request was apparently denied for medical reasons[5] (Doc. 1-1, pp. 2, 35). Defendant Caldwell's notes indicate that Plaintiff could be eligible for the hold to be lifted after 6 months of having no allergic reactions. *Id*.

First, as noted above, the complaint does not suggest that Defendant Caldwell or any of the other Defendants were deliberately indifferent to Plaintiff's condition. Thus, there is no basis upon which to grant Plaintiff any relief. Secondly, a treatment-related or administrative decision such as placing a "medical hold" on a prisoner is not an appropriate matter for court intervention. As an issue of medical treatment, Plaintiff's disagreement with Defendant Caldwell's decision to maintain the medical hold does not support a constitutional claim for deliberate indifference. *See Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003); *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) (courts will not takes sides in disagreements about medical personnel's judgments or techniques).

Considering the effect of the medical hold on Plaintiff's prison classification in reference to his institutional placement or eligibility for a transfer, the complaint also fails to state a claim upon which relief may be granted. "[P]risoners possess neither liberty nor property in their classifications and prison assignments. States may move their charges to any prison in the system." *DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992) (citing *Montanye v. Haymes*, 427 U.S. 236 (1976)). *See also Meachum v. Fano*, 427 U.S. 215, 224 (1976) (the Constitution does not guarantee placement in a particular prison). This includes work release placement. Prison officials may grant or deny work release eligibility at their discretion, and no liberty or property interest is implicated in such a decision. *DeTomaso*, 970 F.2d at 212-13.

---

[5] A response to Plaintiff's June 5, 2014, grievance states that he has a medical hold because he "is prescribed an observed dose medication" (Doc. 1-1 p. 35).

Similarly, Plaintiff has no constitutional right or entitlement to home confinement. Thus, Plaintiff may be assigned to whatever facility is deemed most appropriate for him, regardless of whether or not he has a "medical hold," without any constitutional violation.

For these reasons, Plaintiff's deliberate indifference claim for injunctive relief and damages against Defendants Caldwell, Godinez, Luth, and the Unknown Party Health Care Employees (**Count 1**) shall be dismissed with prejudice.

If Plaintiff wishes to submit an amended complaint in order to pursue a potential claim in **Count 2** against the officers who cut power to his CPAP machine, he may do so as instructed below.

**Pending Motions**

On January 20, 2015, Plaintiff submitted a letter in which he states that he feels his life is in danger now that he has filed the instant lawsuit (Doc. 8). He asks this Court to order prison officials to transfer him to another facility for this reason. Because Plaintiff states that he was unable to access the prison law library to obtain any forms to prepare a motion, the Court construes Plaintiff's letter as a motion for injunctive relief (Doc. 5). This motion, however, shall be denied.

Plaintiff states that the notification from this Court advising him that his complaint had been filed was opened and read[6] before it was delivered to him on December 31, 2014 (Doc. 5, p. 1). He states that after this, Officer Kious/Ledbetter (who is not a Defendant) hollered at him and "swept up" his drinking cup and breathing inhaler that had fallen on the floor, and was going to take his water bottle until Plaintiff picked it up. Based on this incident, Plaintiff argues that his life is in danger.

---

[6] Prison officials may open and inspect incoming mail from a court without infringing on the prisoner's rights, because such correspondence is considered a public document. *Martin v. Brewer*, 830 F.2d 76, 78 (7th Cir. 1987); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996).

An order for injunctive relief such as Plaintiff seeks is an extraordinary remedy. A preliminary injunction "should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 870 (7th Cir. 2006) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original))**.** In considering whether to grant injunctive relief, a district court must weigh the relative strengths and weaknesses of a plaintiff's claims in light of a five-part test that has long been part of the Seventh Circuit's jurisprudence.

Specifically, a plaintiff must establish: (1) that there is a reasonable or substantial likelihood that he would succeed on the merits; (2) that there is no adequate remedy at law; (3) that absent an injunction, he will suffer irreparable harm; (4) that the irreparable harm suffered by plaintiff in the absence of the injunctive relief will outweigh the irreparable harm that defendants will endure were the injunction granted; and (5) that the public interest would be served by an injunction. *Teamsters Local Unions Nos. 75 and 200 v. Barry Trucking*, 176 F.3d 1004, 1011 (7th Cir. 1999). *Accord Judge v. Quinn*, 612 F.3d 537, 546 (7th Cir. 2010); *Pro's Sports Bar & Grill, Inc. v. City of Country Club Hills*, 589 F.3d 865, 872-73 (7th Cir. 2009).

As discussed above, Plaintiff's complaint does not state a claim upon which relief may be granted in this action. He thus fails the first test above. Furthermore, the facts included in Plaintiff's motion do not suggest to the Court that Plaintiff is in any danger, or has experienced any retaliation, as a result of filing this lawsuit. The motion does not meet any of the other criteria to justify issuing an order for Plaintiff to be transferred. Accordingly, Plaintiff's motion for injunctive relief (Doc. 8) is **DENIED.**

If Plaintiff is subjected to some future adverse action in retaliation for bringing this case, he may seek redress in a separate action if necessary. However, he should note that he must first

exhaust his available administrative remedies through the prison grievance system, before any litigation is commenced. *See* 42 U.S.C. § 1997e(a).

Plaintiff's motion for recruitment of counsel (Doc. 2) shall be held in abeyance at this time, pending the receipt of any amended complaint from Plaintiff.

The motion for service of process at government expense (Doc. 3) is **DENIED** as moot, because it is not necessary to file any motion requesting service. As Count 1 shall be dismissed, no service shall be ordered on any Defendant at this time. If Plaintiff files an amended complaint that survives threshold review, the Court shall order service as appropriate.

The motion for leave to proceed *in forma pauperis* ("IFP") (Doc. 4) shall be addressed in a separate order.

**Disposition**

The Clerk is **DIRECTED** to correct the name of Defendant "Warden James" to **WARDEN JAMES LUTH**.

**COUNT 1** is **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that, should he wish to proceed with any claim against the correctional officers who cut power to his CPAP machine (**Count 2**), Plaintiff shall file his First Amended Complaint within 35 days of the entry of this order (on or before March 2, 2015). It is strongly recommended that Plaintiff use the form designed for use in this District for civil rights actions. He should label the pleading "First Amended Complaint" and include Case Number 14-cv-1416-JPG. The amended complaint **shall not** include the dismissed claims in **Count 1**, but shall be limited to the claim(s) designated as **Count 2** herein. Plaintiff shall

specify, *by name*,[7] each Defendant alleged to be liable under the count, as well as the actions alleged to have been taken by that Defendant. New individual Defendants may be added if they were personally involved in the constitutional violations. Plaintiff should attempt to include the facts of his case in chronological order, inserting Defendants' names where necessary to identify the actors and the dates of any material acts or omissions.

An amended complaint supersedes and replaces the original complaint, rendering the original complaint void. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n.1 (7th Cir. 2004). The Court will not accept piecemeal amendments to the original complaint. Thus, the First Amended Complaint must stand on its own, without reference to any other pleading. Should the First Amended Complaint not conform to these requirements, it shall be stricken. Plaintiff must also re-file any exhibits he wishes the Court to consider along with the First Amended Complaint. Failure to file an amended complaint shall result in the dismissal of this action with prejudice. Such dismissal shall count as one of Plaintiff's three allotted "strikes" within the meaning of 28 U.S.C. § 1915(g).

No service shall be ordered on any Defendant until after the Court completes its § 1915A review of the First Amended Complaint.

In order to assist Plaintiff in preparing his amended complaint, the Clerk is **DIRECTED** to mail Plaintiff a blank civil rights complaint form.

Plaintiff's obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350.00 remains due and payable. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk

---

[7] Plaintiff may designate an unknown Defendant as John or Jane Doe, but should include descriptive information (such as job title, shift worked, or location) to assist in the person's eventual identification.

of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

    **IT IS SO ORDERED.**

    **DATED: January 23, 2015**

                                            *s/J. Phil Gilbert*
                                            United States District Judge